EMILINE TROWBRIDGE *vs.* INHABITANTS OF BROOKLINE.

Norfolk. Nov. 11, 1886. — Feb. 26, 1887. HOLMES & GARDNER, JJ., absent.

A town, which, under the Pub. Sts. *c.* 50, lawfully takes land and constructs a common sewer therein, whereby a well upon land not taken, and not adjoining land taken, is made dry, the well being fed by water percolating through the soil, is liable, under the Pub. Sts. *c.* 49, §§ 14, 16, 68, and *c.* 50, § 3, to pay damages therefor to the owner of the land in which the well is situated.

PETITION, filed August 26, 1885, to recover damages alleged to have been sustained by the petitioner by reason of the draining of two wells on her land in Brookline, caused by the building of a sewer by the town of Brookline. Trial in the Superior Court, before *Hammond,* J., who allowed a bill of exceptions, in substance as follows:

It appeared in evidence that the petitioner's land, in which said wells were located, was situated at the junction of School Street and Washington Street in Brookline.

The sewer complained of, commonly called the Cypress Street sewer, was duly laid out by the selectmen of the respondent town on March 9, 1885, and was duly accepted and allowed by said town at a town meeting held March 30, 1885, and extended across Washington Street through land of Eliza J. Chandler, connecting at a point within the land of said Chandler with another sewer already constructed, called the School Street Brook sewer.

No private land was taken for the Cypress Street sewer except a strip of land in the estate of Chandler.

No part of the petitioner's land was taken for said sewer, or entered upon or used in the construction thereof, and no damages were awarded to the petitioner by the selectmen; nor did any part of the petitioner's land abut upon any portion of the sewer, or upon any land taken or used for the construction thereof. The nearest approach of the sewer to the petitioner's land was where the sewer crossed the land of Chandler, which was separated from the petitioner's land by the intervening estate of one Beals, the distance from the westerly line of the petitioner's

estate to the location of the sewer in Chandler's land being, in the shortest and most direct line, about ninety-five feet.

The evidence further tended to show that, prior to the construction of the Cypress Street sewer, the petitioner's land and the other land in the vicinity, all of which was of a gravelly nature, was saturated with water, which percolated through the soil into said wells, at times rising to within a few feet of the surface of the ground. There was evidence also tending to show that the wells were supplied by water coming from below the clay bed. There was no evidence that there were any defined subterranean streams or currents of water leading to said wells.

The evidence showed that the sewer, where it extended through the land of Chandler, was from six to eight feet lower in level than the bottom of the wells, the petitioner's land being higher than the land of Chandler; and that, when the sewer was constructed in the land of Chandler, in June, 1885, both of the wells became dry very suddenly, and had remained dry continuously from that time up to the time of the trial; and it was contended by the petitioner, and admitted by the respondent, that it was the Cypress Street sewer which had caused the wells to become dry, and not the School Street Brook sewer.

It was not contended by the petitioner, nor was there any evidence at the trial tending to show, that there was any negligence in the construction of the Cypress Street sewer, or that the same was constructed in any improper, unskilful, or negligent manner.

It was also proved, or admitted, that the town had settled with Chandler, and had paid her in full for the easement taken in her land, and for all damages occasioned by the laying out and construction of the sewer through her land.

Upon the foregoing evidence, the respondent asked the judge to rule, as matter of law, that the petitioner could not recover. The judge declined so to rule, and submitted the case to the jury, under instructions to which no exception was taken.

The jury returned a verdict for the petitioner in the sum of $50; and the respondent alleged exceptions.

*C. A. Williams*, for the respondent.

*C. F. Perkins*, (*A. M. Lyman* with him,) for the petitioner.

W. ALLEN, J. If the petitioner can recover for damages occasioned by making so much of the sewer as is in the land taken from Chandler, the petition can be maintained, and the ruling was correct, even if damages occasioned by making so much of the sewer as is in the highway may be supposed to have been included in damages for the laying out of the highway; and the question presented is whether a town which lawfully takes land and constructs a common sewer therein, whereby a well upon land not taken, and not adjoining land taken, is made dry, the well being fed by water percolating through the soil, may be liable to pay damages therefor to the owner of the land in which the well is situated.

The respondent is liable for "damages occasioned by the laying, making, or maintaining" the sewer. Pub. Sts. *c.* 50, § 3. The provision in the railroad act is similar: "Damages occasioned by laying out, making, and maintaining its road." Pub. Sts. *c.* 112, § 95. The provision in regard to public ways is: "If damage is sustained by any persons in their property by the laying out," &c. Pub. Sts. *c.* 49, §§ 14, 68. Section 16, which also applies to sewers, provides that, in estimating the damage, "regard shall be had to all the damages done to the party, whether by taking his property or injuring it in any manner." Under these provisions, damages can be recovered for injuring land not taken and not abutting upon land taken. *Dodge* v. *County Commissioners*, 3 Met. 380. *Parker* v. *Boston & Maine Railroad*, 3 Cush. 107. *Marsden* v. *Cambridge*, 114 Mass. 490.

The respondent contends that it had the right of an owner of the land taken to make excavations in it, and thereby drain its neighbor's well; that its act, without the authority and protection of the statute, was lawful, and invaded no right of the petitioner, and gave her no right of action; and that, in accordance with the decisions in England, the statute should be construed to intend only damages which, but for the protection of the statute, could be recovered by action. See *New River Co.* v. *Johnson*, 2 El. & El. 435; *Metropolitan Board of Works* v. *McCarthy*, L. R. 7 H. L. 243. But the respondent does not stand, in this respect, in the position of a purchaser of the land, taking the rights of its grantor. It is not the absolute owner of the land, but it took and holds the right to occupy the land for certain

purposes, and to do upon it certain acts authorized by the statute. In exercising its rights, the town acts, not under the title of the owner, but by virtue of the authority given by the statute, and under the obligation imposed by the statute to pay all damages occasioned thereby. The petitioner had a right to collect and keep the water in her well ; and depriving her of it, so as to injure her land, was a damage to her. It is no answer that other landowners had the same right in respect to their lands, and that, if the petitioner's damages had been in consequence of the exercise of those rights in his land by a landowner, she could not have recovered damages from him. The respondent's rights in the land, and its authority to do the act which caused the damage, are given by the same statute which gives a remedy to the petitioner to recover the damages.

The precise question presented here was decided, in regard to a railroad, in *Parker* v. *Boston & Maine Railroad, ubi supra.* In that case, damages were alleged to have been occasioned, in the construction of a railroad, to land not within or adjoining the location of the road, by changing the grade of a highway and by draining a well. It is not suggested that either would be a cause of action at common law. Chief Justice Shaw says that the main question in the case is " whether a party having land with buildings thereon, lying near the track of a railroad, but not crossed by it, can recover compensation for incidental damage caused to his land, by the construction of the railroad and the structures incident to and connected with it." After discussing the question, he says : " We are of opinion, therefore, that a party who sustains an actual and real damage, capable of being pointed out, described, and appreciated, may sue a complaint for compensation for such damage." In regard to the well, he says: " The claim for damages on this ground does not depend on the relative rights of owners of land, each of whom has a right to make a proper use of his own estate, and sinking a well upon it is such proper use ; and if the water, by its natural current, flows from one to the other, and a loss ensues, it is *damnum absque injuria.* But the respondents did not own land ; they only acquired a special right to and usufruct in it, upon the condition of paying all damages which might be thereby occasioned to others."

*Marsden* v. *Cambridge, ubi supra,* is directly to the point that the petition for damages for taking land for a highway is not a substitute for an action at law. In that case, the petitioner owned one half of a dwelling-house and the land under it. Part of the land under the other half of the house was taken for a highway, and part was left between the location and the petitioner's land and half of the house. The owner of the other half removed it, occasioning loss of support and shelter to the petitioner's half. The court decided, without regard to the petitioner's rights as between himself and the adjoining owner, that the petition could be maintained. Mr. Justice Wells said: " By the laying out of the street the petitioner was deprived of the support and shelter for his house from the other part of the double structure which rested upon the land of his neighbor; and was consequently put to the expense of a new wall for his own part. For the continuance of that support and shelter, of which he was in the actual enjoyment, he had at least the title and assurance arising from mutual necessity and mutual advantage, of which no one but his neighbor could deprive him. That security was taken away by the location of the street in such manner as substantially to destroy the part of the building upon the adjoining land, and render it unsuitable for further use and maintenance as a dwelling."

The decisions in regard to damages occasioned by taking the waters of great ponds are also in point. When the Commonwealth grants a right to take the water, a provision that payment shall be made for all damages sustained by any person in his property by the taking is held to include damages to mill owners by depriving them of the water, although they would have no right to it as against the Commonwealth or its grantee. *Watuppa Reservoir* v. *Fall River,* 134 Mass. 267.

We think that there was evidence that the petitioner received damage in her land occasioned by making the sewer, within the meaning of the statute; and that the court properly refused to rule, as matter of law, that she could not recover.

*Exceptions overruled.*