ARNOLD A. RAND & others, trustees, *vs.* CITY OF BOSTON.

Suffolk.    January 24, 1895. — October 17, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Land Damages — Diminution in Value of Land by building Embankment and
Bridge on opposite Land in abolishing Grade Crossing — Statute.*

A petition cannot be maintained against a city for an assessment of damages,
under Sts. 1890, c. 428, § 5, and 1891, c. 123, § 1, for diminishing the market value
of the petitioner's land, obstructing its light and air, and causing dust to be
blown upon it, by building an embankment and bridge on land taken from a
third person on the opposite side of the street from the petitioner's land, no
part of which is taken, for the purpose of abolishing a crossing of the street by
a railroad at grade.    KNOWLTON & MORTON, JJ., dissenting.

PETITION, under Sts. 1890, c. 428, § 5, and 1891, c. 123, § 1, for
an assessment of damages caused to the property of the peti-
tioners by the abolition of the grade crossing of Everett Street
by the tracks of the Boston and Albany Railroad Company in
that part of Boston called Allston.   Trial in the Superior Court,
before *Hopkins,* J., who reported the case for the determination
of this court, in substance as follows.

The petitioners offered in evidence the report of the commis-
sioners appointed to act upon the petition of the directors of the
railroad corporation for alterations in the crossing.   It appeared
that the report had been duly confirmed by the Superior Court.

The petitioners also offered evidence tending to prove that
at the date of the commissioners' report they had been for sev-
eral years, and still were, owners of the premises set out in the
petition, which recited that their damages had been assessed at
$10,000 by the street commissioners of Boston; that the same
were situated on the corner of Everett and Braintree Streets, and
consisted of about 140,000 square feet of land, upon which prior
to the commissioners' report the petitioners had erected seventy-
one dwelling-houses, all of which were occupied at the time of
the report, and that the total rents from the property were
then about $34,000 ; that an embankment and bridge, ordered
by the commissioners to be built, were erected opposite to the

Everett Street front of the petitioners' premises; that subsequently to the construction of the same, and in consequence thereof, a large part of the petitioners' houses were vacated, and that they had remained vacant; that the petitioners were obliged to lower their rents, and to accept a different class of tenants; and that the actual diminution in rents received by the petitioners was about one half.

The petitioners further offered evidence of persons acquainted with the petitioners' premises, and with real estate values in that part of the city, to the effect that at the time of the commissioners' report the petitioners' premises were worth about $300,000; and that the market value of the same had been diminished by the work done, as ordered by the commissioners' report, to the extent of one quarter to one half.

The petitioners also offered evidence tending to prove that the erection of this embankment obstructed light and air to the petitioners' premises, and occasioned dust to be blown into the same, and was on many accounts very objectionable to the tenants of the premises.

It was conceded that no land had been taken from the petitioners; and that no part of Everett Street, as it existed prior to the taking of land under the commissioners' report, had been changed in grade.

Upon this evidence and offer of evidence, the judge ruled that the petition could not be maintained; and directed the jury to return a verdict for the respondent.

The case was argued at the bar in January, 1895, and afterwards was submitted on the briefs to all the judges.

*R. M. Morse*, for the petitioners.

*T. M. Babson*, for the respondent.

HOLMES, J. The only question argued in this case is whether damages can be recovered under Sts. 1890, c. 428, and 1891, c. 123, for diminishing the market value of the petitioners' land, obstructing its light and air, and occasioning dust to be blown upon it, by building an embankment and bridge upon land taken from a third person on the opposite side of the street from the petitioners' land.

It will be observed that, if any other owner of the land had done the acts complained of, he would have had a perfect right

to do them, and would not have been liable for any of the harm
suffered by the petitioners in consequence. The same thing
would be true as to the city if it had owned the land before,
and had not taken it under the powers conferred by the statute.
If the city has greater liabilities in respect of land taken under
the statute they must be imposed by statute. Whether they are
imposed or not is a question of the construction of the particular
words used, not of general principle.

So far as there is any general tendency or principle of con-
struction to be gathered from the decisions, while damages which
the common law would not allow have been held in some cases
to be given by general words which probably would have been
construed more narrowly in England, (*Woodbury* v. *Beverly*,
153 Mass. 245, see *Stanwood* v. *Malden*, 157 Mass. 17,) still,
here as well as in England the tendency is well settled to deny
damages like the present unless some land of the plaintiff is
taken. *Presbrey* v. *Old Colony & Newport Railway*, 103 Mass.
1. *Walker* v. *Old Colony & Newport Railway*, 103 Mass. 10, 14.
*Fay* v. *Salem & Danvers Aqueduct*, 111 Mass. 27, 28. *Johnson*
v. *Boston*, 130 Mass. 452, 454. *Sawyer* v. *Davis*, 136 Mass. 239,
242. *Wellington* v. *Boston & Maine Railroad*, 158 Mass. 185,
189. *Taft* v. *Commonwealth*, 158 Mass. 526, 548, 549. *Titus* v.
*Boston*, 161 Mass. 209, 211. *In re Stockport, Timperley, & Al-
tringham Railway*, 33 L. J. (N. S.) Q. B. 251. *Cowper Essex* v.
*Local Board for Acton*, 14 App. Cas. 153. See also *Benton* v.
*Brookline*, 151 Mass. 250, 260. It is true that when land is taken
such damages sometimes can be recovered to a certain extent.
The grounds for the exception are discussed in *Lincoln* v. *Com-
monwealth, post*, 368. But the difficulty, if there is one, is
to justify the exception in the form which it has taken, rather
than the rule; and it seems to us putting the cart before the
horse to start from the exception, and to argue that, if such
damages are allowed to any extent under any circumstances,
they ought to be allowed to their full extent and always.

The language of the statute before us, so far as material, is:
" All damages sustained by any person in his property by the
taking of land for, or by the alteration of the grade of, a public
way . . . shall primarily be paid by the city or town." St.
1890, c. 428, § 5. St. 1891, c. 123, § 1. These are the words

which fix the damages to be paid. The later provision for a trial in the Superior Court, " in the same manner and under like rules of law as damages may be determined when occasioned by the taking of land for the locating and laying out of railroads and public ways, respectively, in such city or town," refers to the mode of ascertaining the damage already given, and does not enlarge the express statement of what is to be paid for. It is not argued that there has been an alteration of grade within the meaning of the act, so that the petitioners' case stands on the words " all damages sustained by the taking of land for a public way." In *Bacon* v. *Boston,* 154 Mass. 100, 102, the words " said city shall make compensation to the owners for such lands as it shall take," in St. 1881, c. 303, § 3, were held not to give damages to any one whose land was not taken. In that statute, as in this, there was a reference to the proceedings upon the taking of land for highways. A majority of the court are of opinion that the statute before us has no broader meaning. Cases like *Trowbridge* v. *Brookline,* 144 Mass. 139, under statutes providing expressly, as in Pub. Sts. c. 49, § 16, that " regard shall be had to all the damages done to the party, whether by taking his property or injuring it in any manner," do not apply. We repeat that the question is simply one of construction. The operative words here are narrower than those just quoted from the Public Statutes as to ways and sewers, or even those as to railroads, (" all damages occasioned by laying out, making, and maintaining its road," Pub. Sts. c. 112, § 95,) although, as will have been noticed, the two leading cases which we have cited from 103 Mass. arose under the railroad acts. How the line is to be drawn between those and other decisions under similar statutes we have no occasion to consider further at this time.

*Judgment on the verdict.*

KNOWLTON, J. I regret that in this case I am unable to agree with the majority of the court.

The dwelling-houses and building lots of the petitioners have been very greatly diminished in value by the taking of a strip of land along the line of the street on the opposite side, and the location upon it of a way which crosses over the railroad on a bridge. The petitioners' property, which was situated at a con-

venient grade upon a pleasant street, is now left far below the line of travel, and its light and air and outlook are cut off by a high embankment in front of it. According to the recitals in the petition, these damages were assessed at $10,000 by the street commissioners of Boston. The change was made under the St. of 1890, c. 428, and the St. of 1891, c. 123, which provide for the abolition of grade crossings. Such changes are being made and are likely to be made in great numbers throughout the Commonwealth. By the terms of the statute the damages are to be paid in part by the city or town, in part by the railroad company, and in part by the Commonwealth. " All damages sustained by any person in his property by the taking of land for, or by the alteration of the grade of, a public way," are to be determined " in the same manner, and under like rules of law, as damages may be determined when occasioned by the taking of land for the locating and laying out of railroads and public ways, respectively, in such city or town." St. 1891, c. 123, § 1. The language of the statute seems to me plainly to show that the principles on which the assessment is to be made are not less favorable to persons claiming damages than those applicable to assessment when land is taken for the laying out of any other public street or way. The language defining the damage, as well as the language in regard to the mode of assessing it, is substantially the same as in the Public Statutes. The case of *Bacon* v. *Boston,* 154 Mass. 100, was decided under a statute which requires the city only to " make compensation to the owners for such lands as it shall take under this act."

In my view of the case, the question is whether one who has suffered substantial damages in his property by the taking of land for a public way is entitled to damages if no part of his land is taken. The Pub. Sts. c. 49, § 16, provide that, " In estimating the damage sustained by laying out . . . a highway . . . regard shall be had to all the damages done to the party, whether by taking his property or injuring it in any manner." The provision in regard to damages for laying out, making, and maintaining a railroad, although in different language, is in substance the same. Pub. Sts. c. 112, § 95. The statute giving damages for a change of grade, or other work done in making repairs upon a way, differs from these in limiting the compensation to owners of land adjoining the way. Pub. Sts. c. 52, § 15.

The right taken under these statutes is only an easement, but the nature of the easement is such that the damage is usually the same as if the fee were taken. There were different ways in which the Legislature might have dealt with this subject. They might have said that the Constitution requires compensation only for the land itself which is taken, and no provision shall be made for damages occasioned by the use to which it is appropriated, however great they may be. In this view, even if such a use would constitute a nuisance if made by a private owner, it could not be a ground of compensation, and damages to a person whose land is taken could never exceed the value of the land, and no damages could ever be allowed to any one from whom no land was taken. This would be an extreme view, which, so far as I know, has never been adopted by any court or legislature. Another view less extreme would allow damages only when the use, as affecting the adjacent land, would constitute a nuisance at common law if it were not authorized by the statute ; but when there was injury to that extent would allow any person, whether any part of his land was taken or not, such damages as, if caused by a private owner, would be the subject of an action at the common law. A more liberal provision would give compensation to every person suffering special and peculiar damages in his property from the use to which the land is appropriated, whether any part of his own land is taken or not, and without reference to the question whether the land might have been used in a similar way by an individual owner. Such a provision is not inequitable, for even if no greater damage is done than might have been done by the owner of the fee without liability, there is usually little probability that an individual proprietor would ever put his property to such a use, and if it is appropriated by the public for the general good, it is not unjust that the public should compensate the individual for the loss which it causes him. *Trowbridge* v. *Brookline*, 144 Mass. 139.

Our statutes upon this subject were enacted many years ago, and their language seems to me to show that the Legislature intended to make this last liberal provision for landowners. These acts received a very early interpretation. Whenever they have been discussed by this court, they have been treated as designed to give compensation to every one whose property is

materially diminished in value by any special and peculiar damage resulting from the taking of land. It has been held without exception in a long line of cases, that if a strip, however narrow, of the petitioner's land along his boundary line is taken, damages are to be awarded for the injury done by the location and construction of the highway or the railroad to all the adjacent land. *First Church in Boston* v. *Boston,* 14 Gray, 214. *Geraghty* v. *Boston,* 120 Mass. 416. *Murphy* v. *Boston,* 120 Mass. 419. *Brady* v. *Fall River,* 121 Mass. 262, 264. *Lane v. Boston,* 125 Mass. 519. *Sisson* v. *New Bedford,* 137 Mass. 255. It often happens that a lot from which land is taken is left of such size and shape as to be worth less proportionally than it was as a whole, and this diminution in value is often treated as one kind of damage from the taking. It would be more accurate to consider it, not as damage from the taking to that which is left, but as a part of the value of the land taken which is to be paid for in making compensation, not at its value considered by itself alone, but at its value as a part of the whole lot with reference to the use to which it could be put in connection with that from which it is cut off. This kind of damage, if it is to be called damage, can only exist when a part of the petitioner's land has been taken. But most kinds of damage resulting from the use to which the land is put may exist as well when the location of the highway or railroad is along the side of the petitioner's land two inches away from his boundary line as when a strip two inches wide is taken from him. If a deep cut or a high embankment is made along a location, there is no good reason why large damages should be awarded in one of these cases and nothing in the other.

The authorities seem to me to forbid such an unjust discrimination. In *Dodge* v. *County Commissioners,* 3 Met. 380, the plaintiff owned a lot of land no part of which was taken by the railroad company, but it was held that he was entitled to damages under the statute for injury to a building upon the lot done by blasting a ledge of rocks in the construction of the railroad. In *Ashby* v. *Eastern Railroad,* 5 Met. 368, it is said that " parties interested in land, not taken for a railroad, but so near as necessarily to be damnified by it, are entitled to damages." In *Parker* v. *Boston & Maine Railroad,* 3 Cush. 107, it was held

that under this statute the railroad was liable for the draining of
a well on land adjoining the railroad but not crossed by it, when
an individual owner of the land taken would not have been
liable if he had so used the land as to drain the well. Chief
Justice Shaw says : " This is a remedial provision, and to be
construed liberally to advance the remedy. It is made in the
spirit of the Declaration of Rights, giving compensation to per-
sons sustaining damages for the public benefit. . . . The terms
of the section must include damages which are caused by some-
thing else besides taking land and materials, because damages of
that kind are distinguished from the former by the word ' or.'
So the word ' occasioned ' points to any damage, which may be
directly or indirectly caused by the railroad. We are of opinion,
therefore, that a party who sustains an actual and real dam-
age, capable of being pointed out, described, and appreciated,
may sue a complaint for compensation for such damage." In
*Curtis* v. *Eastern Railroad*, 14 Allen, 55, the same doctrine is
fully set forth by Mr. Justice Hoar, who says : " There are
damages to land which may be occasioned by the construction or
maintenance of a railroad, where the land is not taken, and yet
where the acts done are justifiable, as necessarily incident to
the grant of authority to build and maintain the road. For
such acts the railroad company are not answerable as wrong-
doers, but the remedy of the party injured is by a petition for
the assessment of his damages in the mode provided by stat-
ute." In *Babcock* v. *Western Railroad*, 9 Met. 553, 555, Chief
Justice Shaw, referring to Rev. Sts. c. 39, §§ 45, 54, 56, says :
" Upon this principle, it has been decided that all persons —
not merely those whose land is taken for laying the road, and for
supplying materials, under §§ 54; 55, but, by § 56, all persons
who may sustain damage occasioned by laying out, making, or
maintaining their road — shall have a remedy against the corpo-
ration." The same doctrine is repeated with elaboration in *Pro-
prietors of Locks & Canals* v. *Nashua & Lowell Railroad*, 10 Cush.
385. In *Marsden* v. *Cambridge*, 114 Mass. 490, it was held that
where a street was laid out under Gen. Sts. c. 43, §§ 14, 16, a per-
son could recover damages under the statute for the loss of sup-
port and of shelter to a part of a building owned by him because
the other part of the building and the land under it were taken

by the city.  No part of the petitioner's land or building was taken.   The opinion, without assuming to determine what might be the rights of the petitioner against the owner of the adjacent premises, rests the decision entirely upon the principles laid down in *Ashby* v. *Eastern Railroad* and *Parker* v. *Boston & Maine Railroad, ubi supra.*   In *Trowbridge* v. *Brookline*, 144 Mass. 139, the doctrine is reaffirmed, with a citation of the authorities, and applied to an assessment of damages under the statute author- izing the construction of sewers.   In this case no part of the petitioner's land was taken for the sewer, nor entered upon, nor used in the construction of the sewer, nor did any part of it abut upon any portion of the sewer, nor upon any land taken or used for the construction thereof.   None of these cases are treated as exceptions to the general rule, but all are dealt with as illus- trations of it.   In *Collins* v. *Waltham*, 151 Mass. 196, 198, Mr. Justice Holmes says: "The right to compensation under the Pub. Sts. c. 49, §§ 68, 79, is not confined in terms to owners of land adjoining the highway, as it is in c. 52, § 15.   *Jamaica Pond Aqueduct* v. *Brookline*, 121 Mass. 5.   It would be going pretty far to deny compensation for damage which could be recovered for if caused by a private person.   But we shall not undertake to construe the statute until we find it necessary to do so, beyond saying that it has been intimated that compensa- tion might be recovered under it for damage of this character, and that, so far as we know, it never has been decided that the right, whatever it may be, depended upon the lands touching the highway."

The rule of damages to be applied in these and similar cases was stated by Chief Justice Shaw in *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad*, 10 Cush. 385, 391, in these words: "All direct damage to real estate, by passing over it, or part of it, or which affects the estate directly, though it does not pass over it, as by a deep cut or high embankment, so near lands or buildings as to prevent or diminish the use of them; by en- dangering the fall of buildings, the caving in of earth, the drain- ing of wells, the diversion of watercourses, so far as these are the necessary results of suitable and proper works, to accomplish the enterprise and secure the public easement, which is the object of the charter.   Also, as being of like character, the necessary blast-

ing of a ledge of rocks, so near to houses or buildings as to cause damage; running a track so near them as to cause imminent and appreciable danger from fire; by obliterating or obstructing private ways leading to houses or buildings. These, and perhaps many others of like kind, which particular circumstances may present, we think, are proper subjects for the assessment of damages. But that no damage can be assessed for losses arising directly or indirectly from the diversion of travel; the loss of custom to turnpikes, canals, bridges, taverns, coach companies, and the like; nor for the inconveniences which the community may suffer in common, from a somewhat less convenient and beneficial use of public and private ways, from the rapid and dangerous crossings of the public highways, arising from the usual and ordinary action of railroads and railroad trains, and their natural incidents."

The damages which are excluded from consideration are, first, those that are remote and consequential, and, secondly, those that affect the public generally, as distinguished from those that are direct, special, and peculiar. Damages for discontinuing a way are allowed under the statute which provides damages for laying out a way. Pub. Sts. c. 49, §§ 14, 16. But damages are not allowed if the land does not abut on the portion of the way discontinued if there is access by any public way, because in such a case the damage suffered is only from loss of the enjoyment of a public right which is also suffered in greater or less degree by every member of the community. *Davis* v. *County Commissioners*, 153 Mass. 218. *Hammond* v. *County Commissioners*, 154 Mass. 509. So in setting off benefits, only those that are direct and special, as distinguished from those that are general, are allowed. *Allen* v. *Charlestown*, 109 Mass. 243, 246. *Cross* v. *Plymouth*, 125 Mass. 557. *Parks* v. *Hampden*, 120 Mass. 395. Under the betterment act benefits are assessed upon estates no part of which is taken for the improvement for which the assessments are made, as well as upon others. Pub. Sts. c. 51, § 1.

It seems to me that no one reading the cases above cited can doubt that at the time of the decision in *Walker* v. *Old Colony & Newport Railway*, 103 Mass. 10, it was the settled law of this Commonwealth that direct and special damages to land from the location or construction of a railroad or highway might be

allowed as well when no part of the petitioner's property was taken as when the land damaged was the remainder of a lot from which a part had been cut off by the location. If it were not for certain dicta found in that case and in two or three recent cases which have adopted the same language, I think no one would question that this is the law of Massachusetts to-day. The adjudication in this case was clearly correct, for the testimony admitted under exception, and the instruction of the sheriff, allowed the jury to include in their assessment damages which were general, and not direct or special. But the statement of the learned judge that if no part of the petitioner's land had been taken he would have had no right to recover the particular damages claimed, was purely *obiter*. He was dealing with a claim for damages from noise, dust, and smoke by one from whom land had been taken, and it seems to me that he fell into an error on account of the nature of the damages claimed. He recognized the rule, that, in addition to the value of the land taken, a petitioner is entitled to recover his damages growing out of the use for which the land is taken. See also *Presbrey* v. *Old Colony & Newport Railway*, 103 Mass. 1. But a part of the annoyances for which compensation was asked were suffered, not in the occupation or use of the property, but in going and coming over the public streets, in tarrying and visiting in the neighborhood, and in other ways in which they were common to the whole community, although the petitioner suffered them in greater degree than those who lived farther off. It is clear that such damages are not a subject for compensation. That the judge had these in mind appears not only from the language of the opinion in this case, but from that in *Presbrey* v. *Old Colony & Newport Railway*, 103 Mass. 1, 6. Damage suffered directly in the occupation and use of the petitioner's property is of a different kind. The statement of the judge, taken in its broadest meaning, would allow a railroad company to establish a freight yard under the windows of a valuable dwelling-house, if it took no part of the owner's land, and by switching and making up trains at all hours of the night to create a nuisance tenfold greater than the ringing of the factory bell which was enjoined in *Davis* v. *Sawyer*, 133 Mass. 289. The injury, although of a similar kind, might be far greater than that for which recovery was had at the common

law in *Wesson* v. *Washburn Iron Co.* 13 Allen, 95. For all this, destructive of his property though it might be, the petitioner would be remediless because the Legislature had authorized it under a statute which gave him no compensation. In the same opinion the judge stated a rule for assessing such damages to a person from whom land is taken. He said that depreciation of value from such causes should be considered so far as it is due to proximity secured by means of taking a part of the petitioner's land, and would not have resulted but for such taking. This has been understood to mean that, instead of assessing the whole of a petitioner's damages, the court should allow him his actual damages, less the amount which he would have suffered if the location of the railroad were just outside of his boundary. If the petitioner's land is a large parallelogram, and a railroad is located exactly in the middle of it, he is to be allowed under this rule for noise and dust and smoke his actual damages diminished by what his damages would have been if the railroad ran along the line of his land outside of it. His land on one side may be of such a character that he would suffer no damage if the railroad ran just outside of it, while on the other side it may be such that he would suffer as much from a railroad just outside of it as from one in the middle of the tract. To which side shall the jury go for their subtrahend? If they take the hypothetical damages from one side, there will be little or nothing to subtract, and he will receive all his actual damages; if they take them from the other, the amount to be deducted equals the minuend, and he will get nothing. I can see nothing reasonable in a rule which makes the amount of the damages to be allowed to a claimant depend upon the question whether he would have suffered much or little if the location had been in one place or another just outside of his farm or lot. It seems to me that the amount to be disallowed should be the general damages which he suffers as one of the community who happens to be much in that vicinity, as distinguished from those that he suffers directly in the use and occupation of his property. The nature of the damages claimed has no relation to the question whether the location runs an inch upon the petitioner's land or is an inch away from it. In attempting to meet the difficulty in his mind the judge stated a distinction which made the rights of a peti-

tioner depend upon whether any of his land was taken, and afterwards for one from whom land had been taken he stated another distinction which made his rights depend upon the nature and condition of his property at a distance from the railroad along his boundary line.

I do not think that either of these propositions has ever been adjudicated by this court, and I do not know of more than one or two decisions in which it can reasonably be contended that either of them was involved. There are cases in which they have been assumed in the opinion to be correct, and have been repeated, but never with any discussion of the earlier authorities. I do not think the court, in *Walker* v. *Old Colony & Newport Railway*, intended to overrule the former decisions without referring to them. That there was no such intention seems certain when we notice that the judge who wrote the opinion in that case wrote also the opinion in the later case of *Marsden* v. *Cambridge, ubi supra*, reaffirming the earlier decisions. Nor do I think that there has been any such repetition of these dicta as should be held to have changed the policy of the Commonwealth in regard to the assessment of damages in such cases. I prefer to hold that these equitable principles, applied and fully reaffirmed in the late case of *Trowbridge* v. *Brookline*, 144 Mass. 139, are still the law that should govern us.

As I understand the fundamental principles, the taking of land for a highway or a railroad involves, first, the acquisition of the title, and, secondly, the appropriation to a use. Damages caused by the taking considered merely as the acquisition of a title concern only those whose land is taken. Damages caused by an appropriation to a use concern everybody to whose property a direct and special detriment is caused by the use. Damages of the first class include not only the value of the land considered by itself alone, but, as I have already pointed out, its value for use in connection with that from which it is taken, as affecting its size and shape.

Damages caused by the use to which the land is to be put are entirely apart from the mere change of title. They are allowed because the use causes detriment to property owners in the vicinity. Of course only those owning land near the road can be so affected in their property, but if one is so affected he

should receive compensation. In this particular, one who has parted with a title to land and been fully paid for it is no more deserving than one from whom no land has been taken.

It is important to decide cases, so far as possible, upon principles of general application. It would be possible to hold in these cases that no damages are ever to be allowed that are caused by such a use as might lawfully be made by an individual proprietor. But it has never been so held in this Commonwealth, and there are many cases to the contrary. It might be held that damages from the use should always be allowed to persons who are also paid for a title, and not to any others. But this would be an arbitrary and unjust rule which is in conflict with our decisions. It might be held that certain kinds of damage shall be allowed whether the petitioner's land is taken or not, and that damage of certain other kinds, although direct and special and greater in amount, shall never be allowed. But I know no warrant in law or justice for such a rule, and among the kinds of special and peculiar damage which are real and substantial I know not what should receive favor and what should be rejected. I think it can make no difference in law whether the effect of an injury is felt above or below the surface of the ground, — whether it comes from blasting a ledge of rocks, as in *Dodge* v. *County Commissioners*, or from draining a well, as in *Parker* v. *Boston & Maine Railroad*.

If a foot in width of the petitioners' land had been taken, and a high embankment had been built along the front of their houses and lots, there is no doubt under all of the authorities that the damage to their property caused by the embankment would be allowed them, although an adjacent individual owner might have built it upon his land without liability. If the embankment had been built upon the street without taking any land, full damages would have been allowed for the change of grade. Pub. Sts. c. 52, § 15. I know no good reason why the distance of a few feet between the property of the petitioners and the embankment should affect their rights otherwise than to diminish the amount that should be allowed them.

I am authorized to state that Mr. Justice Morton concurs in this opinion.