HENRY H. SPRAGUE & others *vs.* JAMES DORR.

Suffolk. December 9, 1903. — January 7, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Constitutional Law. Watercourse. Metropolitan Water Supply.*

Special and general statutes, preventing the discharge into streams of polluting matter of such kind and amount as will corrupt or impair the quality of the water, are reasonable regulations of the exercise of private rights of property, and need not provide for compensation to persons having the ordinary rights of riparian owners.

The owner of land through which runs a stream whose waters are taken under St. 1895, c. 488, to be used as a part of the metropolitan water supply, is subject in his use of the stream to regulations made by the State board of health under § 24 of that statute, and such regulations may be enforced against him by the metropolitan water board under §§ 27, 28 of the same statute.

If the owner of land through which runs a stream whose waters are taken under St. 1895, c. 488, to be used as a part of the metropolitan water supply, has acquired by prescription a right to pollute the stream, such right is included in the taking, and the owner is entitled to compensation for it under § 12 of the statute, as a damage sustained "by the interference with the use of any water, or by any other act or thing done by said board under this act."

*Whether,* in the exercise of the police power, the Legislature, without providing compensation, can forbid the pollution of water by one who has acquired a pre-scriptive right to pollute it as against other proprietors, *quære.*

BILL IN EQUITY, filed December 4, 1902, and amended June 10, 1903, by the members of the metropolitan water and sewerage board, under St. 1895, c. 488, § 28, to restrain the defendant from polluting the waters of the Quinepoxet River in the town of Holden, as stated in the opinion.

In the Superior Court the case was heard by *Hardy,* J., who ruled, as matter of law, that the plaintiffs were entitled to the relief sought, and ordered that an injunction should issue as prayed for in the amended bill. At the request of the parties, he reported the questions raised for determination by this court, such decree to be entered as this court should deem proper.

*R. A. Stewart,* Assistant Attorney General, for the plaintiffs.

*B. B. Jones & C. C. Milton,* for the defendant.

KNOWLTON, C. J. This is a bill in equity brought by the members of the metropolitan water board to obtain an injunction against the discharge by the defendant of human excrement

and the contents of water closets and privies into Quinepoxet River, a stream flowing through the defendant's premises in the town of Holden, and forming one of the tributaries of the south branch of the Nashua River, a source of water supply for the cities, towns and water companies named in St. 1895, c. 488. The bill is brought under §§ 27 and 28 of this statute, to enforce rules and regulations made by the State board of health under the authority of § 24. The defendant is the owner of a manufacturing establishment on this river, and he admits that, in violation of these rules and regulations, he is maintaining privies whose contents are discharged directly into the stream. The plaintiffs, seeking to apply the principles on which the St. 1902, c. 535, is founded, offered "to pay the entire expense of constructing water closets and privies at such point or points upon the defendant's premises as they claim will reasonably accommodate the defendant's employees, and at the same time prevent the discharge of human excrement and the contents of privies and urinals into the waters of said Quinepoxet River," but the defendant refused to allow this, contending that it would seriously interfere with his business and property. No question is made as to the reasonableness or validity of the rules and regulations, except that they are in "conflict with the defendant's rights of property." See *Brodbine* v. *Revere*, 182 Mass. 598.

The statute (§ 24) authorizes the making of "rules and regulations for the sanitary protection of all waters used by the metropolitan water board for the water supply of any city, town or water company," etc. That the exercise of such authority by the Legislature is within the police power as it is generally defined by the courts, and within the particular provisions of c. 1, § 1, art. 4, of the Constitution of Massachusetts, is too plain for discussion. It may involve a regulation and modification of a use of streams which otherwise might be made under the common law rights of riparian proprietors. These rights include every reasonable kind of use of the water as it passes by, having a proper regard for the rights of other proprietors on the stream below. It has often been said that riparian proprietors have no right to pollute the waters of a stream. In thinly settled and remote regions, upon streams whose waters are not appropriated to domestic use, impurities may sometimes be discharged into

the water without interfering with any use of it that other riparian proprietors desire to make; but when the water is to be used for drinking, as the waters of most streams may be used and of many streams are in fact used, the uses of riparian proprietors must be limited with a strict regard to cleanliness and sanitation. Hence statutes special and general have been passed from time to time, touching this subject. St. 1878, c. 183. R. L. c. 75, § 124. These laws, so far as they merely prevent the discharge into streams of polluting matter of such kind and amount as will corrupt or impair the quality of the water, are a reasonable regulation of the exercise of private rights of property in reference to the common good, and they are not an interference with property that calls for compensation to the owners.

As the water flowing through the defendant's premises is used as a part of the metropolitan water supply for numerous cities and towns, these rules and regulations control the exercise of the defendant's ordinary rights as a riparian proprietor, and are binding upon him without any taking of his property or provision for compensation. *Newton* v. *Joyce*, 166 Mass. 83 and cases there cited.

. The defendant contends and the plaintiffs deny that he has acquired by prescription a right to discharge these impurities into the stream. We need not decide the question thus raised, for if he has acquired by prescription a right of property in the stream which he would not otherwise have, this right to pollute the stream is taken away by the statute and the action of the board in taking the waters. For damages to his property he is entitled to compensation under § 12 of the act. Damages "in property," are given whether they are sustained by a taking of property "or by the interference with the use of any water, or by any other act or thing done by said board under this act."

The metropolitan water board, under date of February 23, 1898, took all the waters that flow through the defendant's premises, "for the purpose of diverting the same for the uses of said act at or near said line of taking, and not elsewhere." The line of taking is on the stream at a considerable distance below the defendant's premises. A copy of this taking was filed in the registry of deeds in accordance with the statute, and all the other requirements of the act affecting the legality of the taking were

duly complied with. The defendant contends that this taking was not sufficiently broad or definite in its description to include his prescriptive right. We are of opinion that this contention is not well founded. All the waters were taken to be diverted at a point below for use under the act. The Pub. Sts. c. 80, § 96 (R. L. c. 75, § 124) was then in force, under which the discharge of polluting matter into waters so used was forbidden. Under St. 1895, c. 488, § 30, in the absence of rules and regulations of the board of health, this general law applied to these waters as soon as they were taken; for it is not contended that prescriptive rights had been acquired by the defendant previously to July 1, 1878, the date of the enactment of the general law. Moreover, the statute authorizing the taking also authorized the making of rules and regulations for the sanitary protection of the waters. The act of taking, without express mention of any prescriptive right to pollute the waters, necessarily deprived the defendant of this right, if he had it, and brought him within the provision for compensation.

As a riparian proprietor without other rights, the rules and regulations are binding upon him, and if he has a prescriptive right to pollute the water, they are still binding and must be enforced; for he is entitled to compensation for the loss of such a right.

Whether in the exercise of the police power for the preservation of the public health, the Legislature, without providing compensation, might forbid the pollution of water by one who has acquired a prescriptive right to pollute it as against other proprietors, we need not decide.

*Decree for the plaintiffs.*