ALDEN H. KANE & another[1] *vs.* TOWN OF HUDSON.

Middlesex.    January 12, 1979. — May 14, 1979.

Present: KEVILLE, ARMSTRONG, & GREANEY, JJ.

*Eminent Domain,* Damages. *Damages,* Eminent domain.

In an eminent domain proceeding, the judge erred in ruling that the plaintiffs were restricted in their recovery to the value of the parcel which was taken and were not entitled to damages borne by the land they retained. [558-560]

In an action by plaintiffs seeking damages for diminution in the value of their sand and gravel operation caused by a town's construction of a well and its taking of a portion of the plaintiffs' land to protect the purity of the well, the plaintiffs were entitled to show that the effect of the operation of the town well would be to reduce the fair market value of the land they retained by depriving it of pond water in dry periods and to present evidence of the extent of that diminution including the expense actually incurred by the plaintiffs in digging a well necessary as an alternate supply of water in dry periods. [560-561]

In an action by plaintiffs seeking damages for diminution in the value of their sand and gravel operation caused by a town's construction of a well and its taking of a portion of the plaintiffs' land to protect the purity of the well, the plaintiffs were not entitled to damages for the loss of their ability to extract sand and gravel in a twenty-three acre area to avoid cloudiness and discoloration of the well water as required by G. L. c. 40, § 39G. [561-562]

[1] Roger K. Kane.

PETITION for assessment of damages filed in the Superior Court on November 22, 1968.

The case was tried before *Leen, J.*

*Henry P. Grady* for the plaintiffs.

*Max L. Rubin* (*Deborah Rubin Barnhart* with him) for the defendant.

ARMSTRONG, J. In this action the plaintiffs seek damages for diminution in the value of their sand and gravel operation in Hudson caused by the town's construction of a well and by its taking of 7.13 acres of the plaintiffs' land to protect the purity of the well. In a previous trial before a judge sitting without a jury, see G. L. c. 79, § 22, as amended by St. 1973, c. 983, § 1, the plaintiffs recovered $71,300, or $10,000 per acre, and the town demanded a trial de novo before a jury. The jury awarded the plaintiffs a total of $8,556. The plaintiffs moved for a new trial, and the judge ruled that he would allow the motion unless the town would accept an additur of $5,704, bringing the total of $14,260, or $2,000 per acre. The town accepted the additur, and the case is before us on the plaintiffs' appeal from the ensuing judgment. The plaintiffs contend that the judge erred by confining the jury's consideration to the value of the 7.13 acres which the town took by eminent domain and by refusing to let them consider damages to the land which the plaintiffs retained.

The plaintiffs' land at the time of the taking consisted of 110 acres, some of which was solid but much of which was swamp and bog. Below the boggy material, starting at a depth of six to ten feet, and continuing to a depth of thirty to fifty or sixty feet, lay a layer of sand and gravel which the plaintiffs hauled out from under the water table by means of a "drag line." In 1947 they dredged a pond, and at some time they built a "crusher plant." The raw material was crushed and washed in the crusher plant, using water from the pond, and then separated into sand, gravel, and rock of varying degrees of fineness. The washing operation used water at a rate of 350 gallons per minute, which was at all times dependably supplied by the pond.

In early 1966 the town, after testing various sites, located its new well on town land abutting that of the plaintiffs. The plaintiffs, anticipating that the town's drawing of water at the anticipated rate of 500 gallons per minute would drain their pond in dry periods, constructed a well on their own land capable of supplying the needed 350 gallons per minute; and they have in fact had to resort to the well for water at various times since the town began operating its well in May, 1966. In December, 1966, the town, acting pursuant to an unspecified regulation applicable to, and intended to protect the purity of, municipal ground water supplies, took by eminent domain all land owned by the plaintiffs located within 400 feet of the town well (i.e., the 7.13 acres).

The plaintiffs sought to recover for diminution in the value of their property caused by three different factors: (1) loss of the 7.13 acres, and particularly the sand and gravel contained therein; (2) loss of the pond water as a dependable source of water supply for the washing operation, and the cost of furnishing an alternate supply by the digging of the new well; (3) an anticipated loss of the sand and gravel in approximately 23 acres of the plaintiffs' land lying more than 400 feet but less than 1,000 feet from the town well. The last factor was predicated on the plaintiffs' opinion that if they were to operate their drag line within 1,000 feet of the well that activity would cause cloudiness and discoloration in the water drawn at the well. They directed the judge's attention to G. L. c. 40, § 39G, inserted by St. 1938, c. 172, § 3, which provides that "[w]hoever willfully or wantonly corrupts, pollutes or diverts any of the waters taken or held under [G. L. c. 40, §§ 39A to 39E]," as was the town's well, shall be liable for treble damages in tort and shall be subject to certain criminal penalties.

Before the start of the trial the judge informed counsel that he would follow certain rulings of law originally made by the judge who had heard the case without jury, to the effect that the plaintiffs were restricted in their

recovery to the value of the 7.13 acre parcel which was taken and were not entitled to damages borne by the land they retained. The judge saved the plaintiffs' rights as to this ruling, and thereafter made various evidentiary rulings consistent therewith and submitted the case to the jury on that basis.[2]

Although the plaintiffs (for reasons set out below) are not entitled to an award of damages based on all of the factors mentioned, the ruling in question cannot be sustained. As a general rule, in the case of a partial taking, the landowner is entitled to compensation measured, not by the fair market value of the portion taken, but by the diminution in the fair market value of his land caused by the partial taking. *Commonwealth* v. *Coombs*, 2 Mass. 488, 492 (1807). "In determining the damages in cases of [partial taking], the jury should consider not only the value of the property taken, but also the effect of the taking upon that which is left . . . ." *Maynard* v. *Northampton*, 157 Mass. 218, 219 (1892). *Russell* v. *Canton*, 361 Mass. 727, 732 (1972), and cases cited. The measure of damages in such cases is generally the difference between the value of the plaintiffs' land immediately before the taking and its value immediately after. *Garvey* v. *Revere*, 187 Mass. 545, 547 (1905).

A landowner is constitutionally entitled to reasonable compensation for deprivation of property taken for public use. "The Legislature, however, is not limited in providing compensation to damages which the landowner is entitled to receive as a matter of constitutional right but

---

[2] Having saved their rights when the ruling was first made, the plaintiffs were not required to renew their objection when the judge charged the jury and made the various evidentiary rulings. *Krock* v. *Electric Motor & Repair Co.*, 327 F.2d 213, 215 (1st Cir.), cert. denied, 377 U.S. 934 (1964). *Industrial Dev. Bd.* v. *Fuqua Indus. Inc.*, 523 F.2d 1226, 1237 (5th Cir. 1975). *Pstragowski* v. *Metropolitan Life Ins. Co.*, 553 F.2d 1, 4 n.2 (1st Cir. 1977). *Stewart* v. *Ford Motor Co.*, 553 F.2d 130, 140 (D.C. Cir. 1977). 9 Wright & Miller, Federal Practice and Procedure § 2553, at 639-640 (1971).

may extend compensation to instances where an exercise of eminent domain would result in a real hardship to one whose property has been damaged or injured if he were deprived of compensation." *United States Gypsum Co.* v. *Mystic River Bridge Authy.*, 329 Mass. 130, 137 (1952). Under G. L. c. 79, § 12, damages are not limited to those caused by the taking but extend to those caused by the public improvement for which the taking is made. The statutes under which the town made the taking of the plaintiffs' land and under which it constructed and operates the well are G. L. c. 40, §§ 39A-39C and 39E; and G. L. c. 40, § 39F, inserted by St. 1938, c. 172, § 3, provides that "[a]ny person or corporation injured in his or its property by any action of a town under [§§ 39A to 39E] may recover damages from said town under [c. 79]." Under statutes so broadly phrased landowners are entitled to recover in damages any diminution in the fair market value of their lands resulting from a diversion of groundwater caused by the construction or maintenance of a public improvement. *Trowbridge* v. *Brookline*, 144 Mass. 139 (1887). *Sheldon* v. *Boston & Albany R.R.*, 172 Mass. 180 (1898). *Penney* v. *Commonwealth*, 173 Mass. 507 (1899). *Bickford* v. *Hyde Park*, 173 Mass. 552 (1899). Compare *F.F. Woodward Co.* v. *Fitchburg*, 236 Mass. 364, 368, 369 (1920). For discussion of contrasting statutes see *Rand* v. *Boston*, 164 Mass. 354, 357 (1895); *Holbrook* v. *Massachusetts Turnpike Authy.*, 338 Mass. 218, 223 (1958). The jury could find that the highest and best use of the swamp and boggy land of the plaintiffs was as a sand and gravel operation and that the effect of the operation of the town well would be to reduce its fair market value for that purpose by depriving it of pond water in dry periods. In these circumstances the plaintiffs would be entitled to have the case "submitted to the jury for determination of the damage ... sustained by the [plaintiffs] ... by any diminution in the value of the real estate involved in reference to the uses for which it was adapted." *Wine* v. *Commonwealth*, 301 Mass. 451, 458-459

(1938). Admissible as evidence of the extent of that dimi-
nution would be the expense which would be incurred by
a prudent man in providing for an alternate supply of
water; and on that point the expense actually incurred by
the plaintiffs in digging their well is presumptively ad-
missible. Compare *Buell* v. *County of Worcester*, 119 Mass.
372, 374-375 (1876); *Attorney Gen.* v. *Stone*, 209 Mass. 186,
190 (1911); *Wooley* v. *Fall River*, 220 Mass. 584, 588 (1915).
See also *Levenson* v. *Boston Elev. Ry.*, 191 Mass. 75 (1906).

A different principle applies to the plaintiffs' claim for
damages due to the loss, as a practical matter, of the sand
and gravel in the roughly twenty-three acres lying within
a thousand feet of the town well, which were not taken
by the town. In deciding the question presented, we as-
sume that the plaintiffs could prove by evidence not too
remote or speculative that it would be impracticable to
extract that sand and gravel in a manner which would
not cloud and discolor the water drawn at the town well;
and we further assume, without deciding, that whatever
clouding or discoloration would be imparted to the water
at the town wellhead by the operation of the plaintiffs'
dragline more than 400 feet away would constitute a
"corruption" of the water, as that term is used in G. L.
c. 40, § 39G, and would therefore be unlawful. Still, the
plaintiffs are entitled to no compensation for their loss,
for the loss is not the result of any taking, or of the public
improvement for which a taking was made, but is rather
the result of the restrictions which the law imposes on
any person's use of waters which are a source of public
supply. A person may suffer grievous loss by restrictions
imposed on his use of his land to protect the purity of a
public water supply, but he is entitled to no compensation
therefor. *Sprague* v. *Dorr*, 185 Mass. 10, 12-13 (1904). *Com-
monwealth* v. *Sisson*, 189 Mass. 247, 253, 254 (1905). Thus,
in *Barnes* v. *Springfield*, 268 Mass. 497, 511 (1929), cert.
denied, 281 U.S. 732 (1930), it was held that one whose
land was subjected to a partial taking in the construction
of a municipal water supply could recover no damages on

account of the fact that the board of health "posted" portions of his land not taken or because his remaining land was brought within the provisions of G. L. c. 111, § 167, and other laws and rules regulating contamination of water used as a city supply. The principle is not peculiar to a public water supply. No person has a legal right to impair to an unreasonable extent the quality of a water supply shared with others. *Dwight Printing Co.* v. *Boston,* 122 Mass. 583, 588-589 (1877). See *Parker* v. *American Woolen Co.,* 195 Mass. 591 (1907); *Mac-Namara* v. *Taft,* 196 Mass. 597 (1907). Those cases involve the rights of lower riparian owners, but no different principle should apply among persons who share a common source of ground water.

Precluding the plaintiffs from recovering compensation based on a possible impairment of their intended use of the 23 acres is not at variance with the general diminution-in-value principle of damages. By their own testimony the water they use has been drawn from a large underground reservoir, from which other surface owners, including the town, have had a right to draw. If the plaintiffs' use of their land has in fact been inconsistent with the rights of others to draw water in a substantially uncorrupted state, their use has not been based on legal right, but on their good fortune that others (so far as appears) had not chosen to use those waters until the town dug its well. The plaintiffs, in other words, have not lost a property right to use the 23 acres in a manner that will corrupt the ground water, for they did not have such a right; and they are not entitled to compensation for the loss of a right they did not have.[3]

---

[3] We are inclined to think that *Fosgate* v. *Hudson,* 178 Mass. 225, 230-231 (1901), is based on analogous reasoning: that the value of the plaintiff's farm land should be ascertained without assuming his continuing ability to water his cattle at Gates Pond, because the probability that the cattle would in fact pollute or contaminate the purity of that water would deprive him of any right to continue such a use.

The judgment is reversed, and the case is remanded for a new trial which shall take into account not only the value of the land which was taken but also any diminution in value of the land which was not taken, in accordance with the principles stated herein.

*So ordered.*