GLENN W. HARTE[1] *vs.* TOWN OF DARTMOUTH.

No. 97-P-0619.

Bristol. May 12, 1998. - November 20, 1998.

Present: ARMSTRONG, PERRETTA, & SPINA, JJ.

*Way,* Public: Access. *Eminent Domain,* Damages, Injury to property without taking. *Damages,* Eminent domain.

A property owner, seeking damages under G. L. c. 79, § 12, as a consequence of road construction adjacent to the property, did not demonstrate substantial impairment of access from the diversion of traffic as would warrant submission of the case to the jury; the judge correctly granted the municipal defendant's motion for summary judgment. [780-783]

CIVIL ACTION commenced in the Superior Court Department on June 29, 1995.

The case was heard by *John M. Xifaras,* J., on a motion for summary judgment.

*Mark S. Bourbeau* for the plaintiff.

*John A. Birknes, Jr.,* for the defendant.

ARMSTRONG, J. In 1992-1994 the town of Dartmouth widened Faunce Corner Road, a north-south road that intersects with Interstate Route 195. None of the property of the plaintiff Harte, who does business as Harte Toyota, was taken for the project. He seeks damages, however, under G. L. c. 79, § 12, based on a claim of substantial diminution in the accessibility of his auto dealership to potential customers. The judge allowed the town's motion for summary judgment, and the case is here on Harte's appeal from the resulting dismissal.

The facts that are material to the judge's decision and ours are not in dispute. Harte Toyota is located on Old Faunce Corner Road, a quarter-mile loop on the south side of Route 195 and the east side of Faunce Corner Road which, before 1992,

---

[1]Doing business as Harte Toyota.

intersected with Old Faunce Corner Road at both ends. (One imagines that at some time in the past a meandering Faunce Corner Road may have been straightened, with the new, straightened road taking on the name "Faunce Corner Road" and the curved section being renamed "Old Faunce Corner Road" and relegated to off-the-main-road status.) Before the 1992 widening project, customers of Harte Toyota, regardless of their direction of travel on Faunce Corner Road, could reach Harte Toyota by turning into Old Faunce Corner Road at either of its two intersections with Faunce Corner Road.

Part of the 1992 widening project involved the construction of a median barrier on Faunce Corner Road, running south from the Route 195 interchange past Old Faunce Corner Road (i.e., past both intersections) to a third intersection on the east side of Faunce Corner Road that is the main access road into a major shopping plaza. The median barrier prevents southbound vehicles from turning into Old Faunce Corner Road unless they go past it and reverse direction. Because no U-turn is allowed at the shopping plaza intersection, the detour amounts to roughly two miles of additional travel for southbound vehicles on Faunce Corner Road whose destination is Harte Toyota. A second project-related change was a discontinuance of the southerly end of Old Faunce Corner Road as a public way, apparently to avoid having two curb cuts (i.e., the Old Faunce Corner Road intersection and the shopping plaza access intersection) in close proximity on the east side of Faunce Corner Road. The effect, according to Harte, is more than the inconvenience of north-bound customers having to travel the extra quarter mile to the north end of Old Faunce Corner Road, then backtrack on it to the dealership. Because of the hilly terrain between Old Faunce Corner Road and the main road, a northbound vehicle does not see the dealership signs easily and may overshoot the intersection. Both changes have a serious impact on Harte Toyota, because the greater number of its customers travel to it by way of Route 195.[2]

Under G. L. c. 79, §§ 9, 10, and 12, the compensability of

---

[2]We have presented the facts, as is proper in considering a motion for summary judgment, in the light most favorable to Harte as the non-moving party. We have disregarded the fact, as did the judge, that southbound vehicles may still reach Old Faunce Corner Road by taking a left turn off the access road to the shopping plaza. (That access to Old Faunce Corner Road, although open at the time of the hearing before the judge, could be closed off at any time because it involves travel over privately owned ways. We have also

Harte's injury turns on the "distinction between, on the one hand, impairment of access which if substantial may figure as a special and peculiar injury[3] deserving compensation, and, on the other hand, diversion of traffic which lies outside the compensable category even if it results in a decline in a property's market value." *Malone* v. *Commonwealth*, 378 Mass. 74, 78 (1979). The distinction, if not fully explicated by the phrases "impairment of access" and "diversion of traffic," is spelled out in a relatively rich history of decisions that put the present case quite clearly on the diversion-of-traffic side of the line. The closest case, perhaps, is *LaCroix* v. *Commonwealth*, 348 Mass. 652 (1965), in which LaCroix's property fronted on what was in effect a loop of several miles. His access to the main road had been a short 1,250 feet of travel south on the loop road, but the construction of Interstate Route 495 severed that access. Thereafter travel between his land and the main road necessitated several miles of circuitous travel on the loop in the opposite direction. His claim for damages was dismissed because "under our decisions a landowner is not entitled to compensation merely because his access to the public highway system is rendered less convenient, if he still has reasonable and appropriate access to that system after the taking." *Id.* at 657. In *Malone* v. *Commonwealth*, *supra*, the plaintiffs' gift shop, previously located on the much-traveled "College Highway" (Route 10 from New Haven, Connecticut, in the south through Northampton, Massachusetts, to Hanover, New Hampshire), was left by a road straightening project on a loop 450 feet off the main highway in either direction, causing serious detriment to a business presumably dependent on drop-in customers[4]; but the

disregarded the possibility that the town may be in the process of remedying this problem by taking the private ways through eminent domain, a suggestion that the town attempts to make by supplementation of the trial court record.) See *Fidelity Mgmt. & Research Co.* v. *Ostrander*, 40 Mass. App. Ct. 195, 200 (1996).

[3]The requirement that the injury be "special and peculiar to [the affected] parcel" comes from § 12: "In determining the damages to a parcel of land injured when no part of it has been taken, regard shall be had only to such injury as is special and peculiar to such parcel, and there shall be deducted the benefit accruing to such parcel . . . ." The fact that Harte Toyota is the only commercial property on Old Faunce Corner Road does not make its injury "special and peculiar." *Davenport* v. *Dedham*, 178 Mass. 382, 384 (1901).

[4]Harte Toyota, the parties agree, is primarily a "destination location" rather than a drop-in location and thus perhaps in a relatively better position than the Malones' gift shop.

plaintiffs could not recover damages. It has been settled since *Proprietors of Locks & Canals* v. *Nashua & Lowell R.R.*, 10 Cush. 385, 392 (1852), that "no damage can be assessed for losses arising directly or indirectly from the diversion of travel; the loss of custom to turnpikes . . . and the like; nor for the inconveniences which the community may suffer in common, from a somewhat less convenient and beneficial use of public and private ways . . . ." Again, "damages are not allowed if the [plaintiff's] land does not abut on the portion of the way discontinued if there is access by any public way, because in such a case the damage suffered is only from loss of the enjoyment of a public right which is also suffered in greater or less degree by every member of the community." *Rand* v. *Boston*, 164 Mass. 354, 363 (1895) (Knowlton, J., dissenting).[5] To the same effect, see *Tassinari* v. *Massachusetts Turnpike Authy.*, 347 Mass. 222, 225 (1964), and *Miczek* v. *Commonwealth*, 32 Mass. App. Ct. 105, 108-109 (1992). Compare *Nylander* v. *Potter*, 423 Mass. 158, 163 n.10 (1996).

The cases relied on by Harte Toyota are distinguishable. In *Wine* v. *Commonwealth*, 301 Mass. 451, 458-459 (1938), the plaintiff could recover, not because the median barrier prevented southbound traffic from reaching his premises without bypassing and reversing direction, or because one end of the access road to his property was permanently closed, but only because all access to his business premises was blocked during the period the road improvements were under construction from March to July, 1935. In *Betty Corp.* v. *Commonwealth*, 354 Mass. 312, 318-319 (1968), the taking of a portion of the plaintiff's loading zone and the construction of barriers between the loading zone and the adjacent railyard made it physically impossible for tractor trailers to gain access to the plaintiff's shipping and receiving platforms. No such physical impossibility attends access to Harte Toyota. In *Tarka* v. *Commonwealth*, 360 Mass. 855, 856 (1971), the plaintiffs were allowed to

---

[5]As noted in *Hyde* v. *Fall River*, 189 Mass. 439, 441-442 (1905), *Rand* v. *Boston* was implicitly overruled by *Sheldon* v. *Boston & Albany R.R.*, 172 Mass. 180 (1898); however, the relevant principles applicable to the recovery of damages by one whose land is not taken but where property is made less valuable by road improvements are as laid out in Justice Knowlton's dissenting opinion in *Rand*. (The disagreement did not concern the point at issue here; neither the majority nor the dissent in *Rand* would have allowed damages to one whose property is made less conveniently accessible by a traffic diversion, so long as it remains accessible by public ways.)

recover damages, not because their gasoline station had been relegated to side-road status by the diversion of the highway, but because, during the period of construction, access between it and the highway was wholly obstructed.

As the facts most favorable to Harte Toyota would not have warranted submission to a jury, the judge correctly ordered summary judgment for the town.

*Judgment affirmed.*