BESSIE O. HOWELL & another *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.   March 9, 1915. — May 20, 1915.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Damages,* For property taken or impaired under statutory authority. *Grade Crossing.  Railroad.*

A loss of view from certain land occasioned by the abolition of a certain crossing of a railroad with a highway at grade which resulted in bringing the railroad tracks, formerly two hundred feet distant, forty feet nearer to the land, in the construction of four tracks of the railroad instead of two, in the raising of an embankment sixteen and one half feet high so that its top was about on a level with the knob of the front door of a house on such land, and in the cutting off and obstruction of the owner's view of the highway and of a pond and the country nearby, is a damage too remote and speculative and not sufficiently distinct, separate, special and peculiar to warrant a recovery therefor under St. 1906, c. 463, Part I, § 37.

*Whether* under any circumstances there could be a recovery under that statute for loss of view, was not decided.

PETITION, filed on September 29, 1910, under St. 1906, c. 463, Part I, § 37, for the assessment of damages alleged to have been

suffered by reason of the changes wrought in the abolition of the crossing at grade of the defendant's railroad with Mill Street in the part of Boston called Dorchester.

In the Superior Court the case was tried before *Fessenden, J.* The material facts are stated in the opinion. The jury found in substance that the only damage suffered by the petitioners was "by reason of effect on view," and found for the petitioners in the sum of $411.55. The respondent alleged exceptions.

*J. L. Hall,* (*S. C. Rand* with him,) for the respondent.

*H. W. Packer,* for the petitioners.

RUGG, C. J. The single question presented by these exceptions is whether the petitioners can recover damages for injury to the prospect from their land and dwelling by reason of the construction of a railroad embankment in connection with the abolition of a grade crossing.

The petitioners owned a parcel of land with a house and stable thereon situated on the easterly side of Mill Street in the Dorchester district of Boston. Westerly of Mill Street, on land somewhat lower in grade than the petitioners' land, ran the respondent's tracks, crossing Mill Street at grade about two hundred and thirty feet away, and being at its nearest point across Mill Street and the land of other owners about two hundred feet from the petitioners' estate. The Mill Street crossing at grade was eliminated by proceedings under the grade crossing abolition act. As a result, certain land of other persons about two hundred feet or more from that of the petitioners was taken, the railroad was elevated sixteen and one half feet at a point opposite the petitioners' estate, bringing the grade of the tracks about on a level with the knob of the petitioners' front door, four tracks were constructed in place of two, the nearest one being thirteen feet nearer to the petitioners' estate than either of the two existing before. Now the shortest distance between any part of the petitioners' land and the respondent's location is about one hundred and sixty feet. The abutments of the bridge on which the tracks were carried over Mill Street obstructed the view of that street from the petitioners' house, while the prospect in front is affected to the extent that a pond and other country nearby are cut off by the embankment.

It was held in *Hyde* v. *Fall River,* 189 Mass. 439, that a landowner might recover for damages suffered in consequence of changes in

a street in connection with a grade crossing abolition which were special and peculiar to him as distinguished from injuries sustained by him in common with the public at large, even though no part of his land were taken, thus overruling *Rand* v. *Boston,* 164 Mass. 354. In *McKeon* v. *New England Railroad,* 199 Mass. 292, it was determined that there could be no recovery where no land or easement in land had been taken from anybody. In the light of these decisions, the precise point now presented is, whether it can be said as matter of law that damage to these petitioners is too remote, speculative or intangible to be recoverable under the statute.

The essential words of the governing statute, which in this respect have not been changed since R. L. c. 111, § 153, are in St. 1906, c. 463, Part I, § 37, as follows:

"All damages which may be sustained by any person in his property by the taking of land for or by the alterations of the grade of a public way, or by an abutter thereon by the discontinuance of such public way, to the same extent as damages are recoverable by abutters on ways discontinued by towns, or by the taking of an easement in land adjoining a public way, shall primarily be paid by the city or town; and all damages which may be caused by the taking of land for the railroad or by the change or discontinuance of a private way, or by the taking of an easement in land adjoining a private way or a railroad location in connection with the abolition of a grade crossing shall primarily be paid by the railroad corporation; and all damages which may be sustained by any person by the abolition of private ways, except as hereinbefore provided, shall be entirely paid by the railroad corporation."

The precise effect of the decision of *Hyde* v. *Fall River,* 189 Mass. 439, in connection with *Rand* v. *Boston,* 164 Mass. 354, relates to the interpretation of the statute as to the extent of damages recoverable under the grade crossing abolition act. It was said by Holmes, J., speaking for the majority of the court in *Rand* v. *Boston,* that "The question is simply one of construction. The operative words here are narrower than those just quoted from the Public Statutes as to ways and sewers, [c. 49, § 16, now R. L. c. 48, § 15, 'regard shall be had to all the damages done to the party, whether by taking his property or injuring

it in any manner'] or even those as to railroads, ('all damages occasioned by laying out, making, and maintaining its road,' Pub. Sts. c. 112, § 95)." The utmost scope of *Hyde* v. *Fall River* was to overrule this, which was the essence of the decision of *Rand* v. *Boston*, and to decide that the damage clause in the grade crossing abolition act was not narrower than that of the general highway law, but was the same in substance. There is no intimation anywhere in the opinion of *Hyde* v. *Fall River*, that it was intended to say that the effect of the damage clause was enlarged over that governing the case where land was taken for highway uses under the general law. The chain of reasoning of the opinion is to establish the same rule of damages to property arising from the laying out of highways in grade crossing abolition proceedings as that prevailing where land was taken for laying out a highway under the general law. But that decision went no further. There is no rational ground for contending that the language of the damage clause of the grade crossing act is broader than that of the general highway statute. This is so plain that it is not necessary to pause for amplification. There is nothing in the facts of *Hyde* v. *Fall River* to warrant any other conclusion. The abutters there were "left with a street nearly fifteen feet high and only forty feet away, built in front of their premises, over which teams are frequently passing." 189 Mass. 440. It was in effect the widening of the street by the addition on the opposite side of another level for travel. Manifestly under the general highway damage clause there were damages special and peculiar to the abutter on the other side of the street. Although *Hyde* v. *Fall River* related only to that part of the grade crossing abolition statute which expressed the right to damages arising from the construction of highways, the reasoning of the opinion requires that it be applied to damages arising from the construction of the railroad. But that decision has no greater effect in the one class of damages than in the other. The rule of damages was not enlarged nor magnified. It simply was restored as matter of statutory interpretation instead of being narrowed.

It follows that in assessing the damages occasioned by railroad constructions in connection with a grade crossing abolition, the rule of damages established by the general railroad law for assessing damages by the construction of railroads is to be followed.

That rule is found in St. 1906, c. 463, Part II, § 83, in these words: "All damages caused by laying out, making and maintaining its railroad, or by taking land or materials therefor," shall be recovered. These are almost the identical words of similar statutes from the beginning, certainly the same in legal intendment, with reference to which all our decisions have been made as to the extent of damages recoverable for the laying out, construction and maintenance of railroads.

It has been settled by a long series of decisions that a landowner may recover compensation for actual and real damage to property arising from the laying out, construction or maintenance of a railroad, capable of being pointed out, described and appreciated, although no part of his land has been taken. *Dodge* v. *County Commissioners*, 3 Met. 380. *Ashby* v. *Eastern Railroad*, 5 Met. 368. *Parker* v. *Boston & Maine Railroad*, 3 Cush. 107, 113, 114. *Babcock* v. *Western Railroad*, 9 Met. 553, 555. *Brown* v. *Providence, Warren & Bristol Railroad*, 5 Gray, 35. *Curtis* v. *Eastern Railroad*, 14 Allen, 55. *Sheldon* v. *Boston & Albany Railroad*, 172 Mass. 180. *Whitney* v. *Commonwealth*, 190 Mass. 531, 533.

A review of some of our decisions in which claims for damages have been disposed of adversely will afford assistance in reaching a just conclusion respecting the petitioners' contentions. In *Presbrey* v. *Old Colony & Newport Railway*, 103 Mass. 1, a landowner sought damages for the depreciation of land which for the purposes of that case was ruled to be outside but adjoining the location of the railroad, arising from proximity to the railroad, such as for frightening horses and like causes, and the annoyance and inconvenience arising from the laying of the track and the frequent passing of trains; and it was said by Wells, J., "When the injury complained of consists only in annoyances, as by the 'frightening of horses and such like causes,' whether by crossing streets or passing near to private avenues or land, it is not such a direct and appreciable injury to the land or the landowner as to constitute, of itself, a ground for the recovery of damages; although it may make the land less desirable for some purposes, less saleable, and thus depreciate its market value." In *Walker* v. *Old Colony & Newport Railway*, 103 Mass. 10, it was said at page 15, respecting a landowner's claim of damages for depreciation arising from the proximity of the railroad and from the running of trains: "If

the road had been constructed close to his land, but without taking any part of it, he would have had no right to recover for any depreciation in the value of his property by reason of the several causes" for which damages were sought. In *Wellington* v. *Boston & Maine Railroad,* 158 Mass. 185, the claim was made by a landowner that because of the laying out of a railroad not only was he entitled to recover damages occasioned to adjacent land, but also to other lots owned by him not far away. It was said respecting this contention: "We see nothing in the case to indicate that any special or peculiar damage was caused to any of the remaining lands of the petitioners, save the lots immediately adjoining the land taken, or upon the same street with the railroad. If the widening of the railroad and the laying of additional tracks, whether for traffic or to be used as a freight yard, made the village less desirable as a place of residence, because it was more difficult or dangerous to cross the tracks in passing from one locality to another, or because of increased noise or smoke, or because the tracks, or the cars which might be stored upon them, might be unsightly or displeasing, none of these circumstances would properly be elements of the damages to be awarded to lots no portion of which was taken, because they were general, affecting the whole village, and not special and peculiar to the lands of the petitioners. . . . Such considerations are to affect the damages to the residue of those lots parts of which are taken only so far as the railroad is brought nearer, and the inconvenience thus aggravated by its greater proximity due to the fact that part of the lots are taken." In *Davenport* v. *Hyde Park,* 178 Mass. 385, a claim was made for damages for loss of view, cut off by an embankment to support the highway, which as appears from an examination of the original papers began at its nearest point one hundred and thirty feet distant from the petitioner's lot and rose by a five per cent grade to a height of eighteen feet in the clear above the railroad tracks at an overhead bridge, whereas the street theretofore had been substantially level. Evidence was excluded as to the effect on the view of this embankment, and respecting an exception thereto it was said by Hammond, J.: "Manifestly the land was too far away to make that a practical question."

These decisions seem to be decisive against the petitioners' claim in the case at bar. We are unable to distinguish in prin-

ciple the fright of the farmer's workhorse in the adjacent field, the discomfort from the rumbling of trains and smoke of locomotives, the unsightliness of railroad tracks and numerous cars, from the elevation of the embankment comparatively slight in perspective, of which the present petitioners complain. The embankment as a new bed for the pre-existing railroad does not interfere with light and air upon the petitioners' estate. At the distance of over one hundred and fifty feet across a highway and intervening property of other owners, at its elevation it can hardly be said to affect their estate directly in the sense that it is so near as to prevent or diminish or seriously to interfere with the valuable use of the estate by its physical imminence or by obliterating any features essential to its enjoyment. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad,* 10 Cush. 385, 391, 392. The interference with the view from the petitioners' house and estate, which is the sole ground on which damages are sought in the case at bar, seem to us to relate to matters too remote and speculative and are not sufficiently distinct, separate, special and peculiar to the petitioners to warrant a recovery even under the broad rule established by the statute. They are not different in kind from those suffered by all the public who travel on Mill Street, but only greater in degree. The scar upon a landscape resulting from a high railroad embankment and the consequent intrusion of the business of railroading upon the solitude of hill and mountain may have an appreciably deleterious effect upon a distant estate whose chief market value may lie in its remoteness and seclusion from evidences of commercialism. It is conceivable that evidence might be proffered tending to show that such intrusion was obnoxious and the effect upon market value was substantial. No decision here or elsewhere, so far as we are aware, ever has gone so far as to hold that damages might be recovered for invasion of purely æsthetic elements of value such as these.

The present case does not call for a determination that no circumstances can arise which would warrant the recovery of damages under a statute similar in terms to the one here controlling for the obtrusion of ugly structures into a fine prospect. When cases approach close to the line, decision becomes difficult. But we are of opinion that the interference with view shown by the facts here disclosed does not reach to a special and peculiar dam-

age to the petitioners differing in kind from that suffered by the general public. As matter of authority, we think their claim for damages falls within the class held in the decisions to which reference has been made to be too remote, speculative and general to be foundation for recovery under this statute and is indistinguishable in principle from them.

*Exceptions sustained.*