RICHARD M. SALTONSTALL & others, trustees, *vs.* NEW
YORK CENTRAL RAILROAD COMPANY.

Suffolk.    October 18, 1920. — February 28, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Damages,* Property taken or damaged by statutory authority. *Pleading, Civil,*
Declaration, Misjoinder of counts. *Railroad. Nuisance. Words,* "Taking,"
"Maintaining."

The rule of damages governing a taking of property by a railroad corporation under
St. 1896, c. 516, and the general railroad law, Pub. Sts. c. 112, § 95, discussed by
RUGG, C. J.

St. 1896, c. 516, conferred upon the Boston and Albany Railroad the right to ac-
quire land for Trinity Place station by the exercise of eminent domain and by
purchase at private sale.

The word "taking" in the provision for damages set forth in St. 1896, c. 516,
§ 23, includes acquisition of title by any of the means authorized by the act
and is not confined to instances of the exercise of eminent domain.

The obligation imposed by Pub. Sts. c. 112, § 95, St. 1896, c. 516, § 23, upon the
railroad corporation to pay all damages arising from "maintaining its road" in-
cludes whatever elements of legal damage follow from the operation as well
as from the actual upkeep of the railroad.

The Legislature cannot legalize what otherwise would be a nuisance of such a
nature as to amount to a taking of private property for public use and at the
same time confer immunity from liability upon the one establishing the nuisance.

In an action of tort by the owner of an apartment hotel in Boston, called Trinity
Court, against a railroad corporation for damages to the hotel caused by cinders,
smoke, vapor and noise, the declaration contained three counts, each count
alleging a taking by treaty and not by eminent domain by the defendant's
lessor under St. 1896, c. 516, § 21, of certain land at Trinity Place and the con-
struction and operation thereon of a railroad station for outward bound trains
and damages to the hotel caused by smoke, soot, cinders and loud and disagree-
able noises emitted unnecessarily and unreasonably from locomotives at the
defendant's station. The third count alleged that the injuries complained of
were the necessary, unavoidable and direct result of obedience to certain statutes
relating to a stopping of trains at a certain point and amounted to a *de facto*
taking by the defendant of substantial property rights of the plaintiff in the
hotel. Upon a demurrer to the declaration it was *held,* that

(1) The third count set out no cause of action in tort and was joined im-
properly with the first and second counts;

(2) The plaintiffs' remedy, if any, for the injuries complained of in the third
count of the declaration was by petition for the assessment of damages under
St. 1896, c. 516.

Tort for damages caused to Trinity Court, an apartment hotel in Boston owned by the plaintiffs, by smoke, vapor, cinders and noise emitted from locomotives operated by the defendant at Trinity Place station. Writ dated June 14, 1919.

The declaration contained three counts which are described in the opinion. The defendant filed a demurrer to the declaration alleging the misjoinder of two counts in tort with a count not sounding in tort and further objecting to the third count on the grounds that the defendant could not be liable in an action of tort for obeying an act of the Legislature; that the plaintiffs' only redress for the injuries complained of was by a petition for the assessment of damages under St. 1896, c. 516, § 23, or other applicable statutes and that if the third count is in effect such a petition, it was not seasonably brought; that in so far as the location of Trinity Place station was concerned, that was an act of the Boston and Albany Railroad Company and not of the defendant, and therefore could not impose any liability on the defendant, and that in any event the damage was too remote and speculative and was not sufficiently distinct, separate, special and peculiar to the plaintiffs to be recoverable at all.

The case was argued on the demurrer before *Hammond*, J., who, being of opinion that a remedy was given to the plaintiffs by statute for the recovery of the damages described in the third count by petition for the assessment of damages, made an order sustaining the demurrer and reported the case upon that order to this court for determination. It was agreed that if the judge was right in sustaining the demurrer, then the plaintiffs were to have leave to amend their declaration by striking out the third count thereof, and if they declined to make such amendment, judgment was to be entered for the defendant; but that if he was wrong in sustaining the demurrer, then the case was to stand for trial on all three counts of the declaration, without prejudice, however, to whatever right the defendant would otherwise have had to move at the trial to compel the plaintiffs to elect between the first and second counts of their declaration, or between the first two counts of said declaration, or either of them, and the third count thereof.

*W. G. Thompson, (G. E. Mears* with him,) for the plaintiffs.

*C. O. Pengra,* for the defendant.

RUGG, C. J.  This action is stated in the writ to be in tort.  The declaration contains three counts.  In each the plaintiffs are alleged to be owners of an apartment hotel in Boston called Trinity Court and of the land on which it is built.  The lot is bounded in part on Dartmouth and Stuart streets and Trinity Place and on those premises of the Boston and Albany Railroad, on which is situated its Trinity Place station.  The first two counts set out the unnecessarily noisome and negligent operation of locomotives and trains by the defendant by emitting smoke, cinders and vapors in the starting and movement of its locomotives at and in connection with Trinity Place station, to the direct injury of the Trinity Court property.  No cause for demurrer is urged specifically against these counts standing alone.  See *Matthews* v. *New York Central & Hudson River Railroad*, 231 Mass. 10.

The third count alleges that by St. 1896, c. 516, § 21, the railroad, to whose duties the defendant has succeeded, was required to construct and open for public use a passenger station for all outward bound trains at some location near Dartmouth Street, and for that purpose to purchase or take in fee land therefor within a prescribed area; that acting in accordance therewith the railroad did construct the Trinity Place station on land purchased by private treaty and not taken by eminent domain; that the engines of all outbound passenger trains have been required by statute to stop at that station and in the immediate vicinity of the estate of the plaintiffs; that the plaintiffs' injury, being the same in substance averred in the previous counts, was "The necessary, unavoidable, and direct result of the starting up again by the defendant" of the engines of its outward bound passenger trains at Trinity Place station; that the plaintiffs' injury has been gradual and cumulative and has within the six-year period prior to the date of the writ amounted not to a legal but to a *de facto* taking of a substantial portion of their Trinity Court property, and that the plaintiffs will continue so to be deprived of their property so long as the defendant continues to obey the mandate of the statute as to the stopping and starting of trains at that station.

The defendant demurred and has assigned numerous causes.  One is in substance that the third count sets out no legal cause of

action in tort, and that the plaintiffs' remedy if any for the injury there set forth was by petition for the assessment of damages within the time limited and in accordance with the terms of said c. 516.

The demurrer admits for the purposes of this decision all facts well pleaded but not the allegations of law in the declaration. *Jones* v. *Dow,* 137 Mass. 119, 121.

The words of said c. 516 in § 21 are that for the purpose of carrying out the mandate of the Legislature respecting the establishment of Trinity Place station the railroad may "purchase or otherwise take in fee" the necessary land. These words are in substance and effect the equivalent of authority to "take by purchase or otherwise in fee." Any agreement of parties for purchase effected under the terms of such statutory language must have been made in view of knowledge by all concerned that the right to exercise eminent domain by the railroad was present as an element to be taken into account in the bargaining. The power to seize private property for a public use has been conferred in great variety of words and by some diversity of means. *Turner* v. *Gardner,* 216 Mass. 65. However expressed, the fundamental factor always is the expropriation of private property to the public use. The right to acquire title to such property by negotiation through the instrumentality of agents rather than by resort to a formal instrument of taking and assessment of damages by the courts relates to the means rather than the end. It is a method of fixing as between the owner and the railroad the price at which the transfer shall take place. It does not affect in any degree the use to which the property is to be put when acquired, nor the rights of others arising from such use. Acquisition of title to such property except for the general public utility, to serve which it was organized, would not be within the corporate power of the railroad. *Williams* v. *Johnson,* 208 Mass. 544. It cannot be thought to have been the purpose of the Legislature in conferring authority upon the railroad both to buy and to seize private property, that the rights of others, flowing from the public use to which the private property must be devoted after title to it has in any way been transferred to the railroad, should be in any measure modified or influenced by the particular form in which the power should be exercised. That would make property rights of

private persons dependent upon the accident of the form of doing rather than upon the substance of the thing done. Such a result would be contrary to presumed legislative intendment and is not in accordance with the words of the statute construed in their natural signification. The railroad corporation acquired the land for Trinity Place station, not theretofore owned nor needed by it, under express authority of the statute, being clothed therefor by the sovereign power with the right both to exercise eminent domain and to purchase at private sale. It was new property obtained wholly under new authority for the sole purpose of being put to the new railroad uses thereby created and imposed upon the railroad. Under these circumstances it is irrelevant whether the title actually was acquired by a private treaty or by eminent domain. There is nothing at variance with this conclusion in the statement in the opinion in *Howell* v. *New York, New Haven, & Hartford Railroad,* 221 Mass. 169, 171, summarizing *McKeon* v. *New England Railroad,* 199 Mass. 292, to the effect that under the grade crossing abolition act no damages are recoverable by anybody unless land or an easement in land has been taken from somebody by the railroad. Those two decisions were made and opinions written with reference to the provisions of statute authorizing the abolition of grade crossings. St. 1906, c. 463, Part I, §§ 29, 34, 36, 37. Under those sections the taking of land is accomplished solely by decree of the Superior Court confirming a determination by a commission of three appointed by the court. Those sections expressly authorize acquisition of land by the railroad and by the municipality only by a taking brought about in that way and do not in terms empower either railroad or municipality to purchase land by private negotiation for grade crossing abolition. See also said c. 463, Part I, § 41. Those two decisions are not constrictive of the meaning of the words "taken," "take" or "taking" when used in other context in their comprehensive sense to include acquisition for a public use of private property or of easements therein either by purchase through private negotiation or by seizure through the exercise of eminent domain, when both means of such acquisition of title are authorized by law. The McKeon case did not lay down the rule that, under the general railroad act or other railroad acts differing in phraseology from that of the grade crossing abolition act, a landowner, no

part of whose land was taken, would be deprived of all right to recover damages simply and merely because the railroad corporation, being authorized both to seize land by eminent domain and to buy it by private negotiation, pursued the latter course.

The rule of damage established by said c. 516 is found in § 23 in these words: "The laws of the Commonwealth relating to the taking of lands for railroad purposes, and the location and construction of railroads, and the assessment of damages occasioned thereby, shall be applicable to and govern the proceedings in the taking of land hereby authorized to be taken by said terminal company . . .," with exceptions and further provisions not here material. The word "taking" in this section referring by implication to damages arising from the exercise of the power conferred by § 21 as well as by §§ 4, 17, 18, includes acquisition of title by any of the means authorized by the act and is not confined to instances of exercise of eminent domain. The rule of damages of the general railroad law applicable at that time and thus incorporated into said c. 516, is found in Pub. Sts. c. 112, § 95, as follows: "It [the railroad] shall pay all damages occasioned by laying out, making, and maintaining its road, or by taking land or materials therefor. . . ."

It has been held in numerous decisions that under this provision of the general railroad law a "landowner may recover compensation for actual and real damage to property arising from the laying out, construction or maintenance of a railroad, capable of being pointed out, described and appreciated, although no part of his land has been taken." *Howell* v. *New York, New Haven, & Hartford Railroad,* 221 Mass. 169, 173, where the cases are collected. That this was the rule of damages intended by the General Court in enacting said c. 516 is clear from the terms of the amending St. 1899, c. 386, which in § 1 extended "The time within which any party suffering damages whose land is not taken" might file his petition for damages accruing from certain causes. It follows as an inevitable corollary from this well settled rule that all legal damages, whether immediate or remote, present or future, arising from the location of the railroad and that which follows necessarily therefrom in way of subsequent maintenance and operation, are paid for at the beginning, and that whatever changes thereafter may be wrought upon the railroad location in

the natural development of the railroad art constitutes no new cause of action unless authorized by some new statute. *Cassidy v. Old Colony Railroad,* 141 Mass. 174. *McKeon v. New England Railroad,* 199 Mass. 292. The reason, on which cases like these rest, is that when land is taken for railroad uses either by purchase or seizure, in substance and effect the entire property is taken. In any event, paramount and practically exclusive rights over the land are taken and nothing of even taxable value is left. *Lancy v. Boston,* 186 Mass. 128. The original owner and neighboring proprietors under the statutes as interpreted in decisions collected in 221 Mass. 173, have had the right of compensation for actual damages sustained by reason of the railroad. They thereafter stand with reference to the railroad and its changing constructions the same as with reference to a private individual who is a neighboring owner and is exercising his ordinary rights of proprietorship, unless a subsequent statute confers right to new damages. The same is true respecting the location of highways. *Hyde v. Boston & Worcester Street Railway,* 194 Mass. 80, where earlier cases are reviewed. *Peabody v. Boston,* 220 Mass. 376. It is not necessary in this connection to discuss the decisions of *Rand v. Boston,* 164 Mass. 354, and *Hyde v. Fall River,* 189 Mass. 439. They were considered in *Howell v. New York, New Haven, & Hartford Railroad,* 221 Mass. at pages 171, 172.

The obligation of the railroad was to pay all damages arising from "maintaining its road." "Maintaining" in this connection is a word of broad signification. It includes whatever elements of legal damage follow from the operation as well as from the actual upkeep of the railroad. *Boston, petitioner,* 221 Mass. 468, 475. Otherwise it would be manifestly unjust to allow as set-off to a petition for the assessment of damages for the taking of part of a tract of land the direct, special and peculiar increase of value accruing to the part remaining to the owner by reason of the establishment of a railroad. Yet that principle is firmly established. *Meacham v. Fitchburg Railroad,* 4 Cush. 291. *Fifty Associates v. Boston,* 201 Mass. 585, and cases there reviewed. Benefit to neighboring land can arise only from the operation of the railroad as distinguished from its technical location or the upkeep of its physical constructions.

It is not necessary to determine in this connection with precision

how far the acts alleged in the third count constitute a nuisance of so grave a nature that the Legislature could not authorize them without providing compensation or leaving to injured persons their common-law rights of action. The Legislature cannot legalize what otherwise would be a nuisance of such nature as to am6unt to a taking of private property for a public use, and at the same time confer immunity from liability upon the one establishing the nuisance. It has been assumed that it was the purpose of the pleader in drafting that count to set out such a nuisance. The case has been argued and considered on that footing. *Bacon* v. *Boston,* 154 Mass. 100. *Case* v. *Minot,* 158 Mass. 577. *Vaughan* v. *Bridgham,* 193 Mass. 392. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486, and cases collected. *Stevens* v. *Worcester,* 219 Mass. 128. *Diamond* v. *North Attleborough,* 219 Mass. 587. *Garvey* v. *Long Island Railroad,* 159 N. Y. 323. In dealing with such a case where the acts "complained of would be a nuisance but for the statute, a court should be more ready to find a remedy under the act than in a case of *damnum absque injuria* at common law." *Lincoln* v. *Commonwealth,* 164 Mass. 368, 375.

Whatever injuries from the location of the Trinity Place station and its use as required by statute have accrued to the plaintiffs of such nature as to amount in fact to a taking of their property, to a substantial deprivation of its use, or to a direct, special, peculiar and unreasonable interference with their peaceful and comfortable enjoyment of it were subject to compensation by petition under said c. 516.

The allegations of the third count are that the damage to the plaintiffs has arisen from obedience of the defendant to the mandate of said c. 516 that all its outward bound passenger trains shall stop at the Trinity Place station. Comparatively slight infractions of the rights of individuals may be authorized by the Legislature without compensation, while grave ones encounter the constitutional limitations against unreasonable laws, deprivation of property without due process of law, and the taking of private property for public uses without reasonable compensation. It accordingly is well established that "the incidental injury which results to the owner of property situated near a railroad, caused by the necessary noise, vibration, dust and smoke from passing trains, which would clearly amount to an actionable

nuisance if the operation of the railroad were not authorized by the Legislature, must, if the running of the trains is so authorized, be borne by the individual, without compensation or remedy in any form." *Sawyer* v. *Davis*, 136 Mass. 239, 241, 242. *Richards* v. *Washington Terminal Co.* 233 U. S. 546, 553–555. See *Holcombe* v. *Creamer*, 231 Mass. 99, and *Opinion of the Justices*, 234 Mass. 597, and cases collected in each. If and so far as the facts set forth in the third count fall within this classification of course they set forth no ground of action.

It is not necessary to discriminate further between these two classes of injuries  The third count of the plaintiffs' declaration apparently was designed to describe a class of injuries so grave, special and peculiar as to be beyond the power of the Legislature to authorize with immunity from liability. The plaintiffs' remedy for such injuries was by petition for the assessment of damages under said c. 516. If the third count describes injuries falling outside that class, they are injuries for which the law affords no remedy. In any event, that count sets out no cause of action in tort. It improperly was joined with counts one and two, which are counts in tort. The demurrer was sustained rightly. R. L. c. 173, §§ 1, 6, cl. 6. In accordance with the terms of the report the plaintiffs have leave to amend their declaration by striking out the third count, and if they decline to make such amendment, judgment is to be entered for the defendant.

*So ordered.*