GRACE H. WYMAN * *vs.* CITY OF BOSTON.

Suffolk.    January 10, 1933. — February 21, 1933.

Present: RUGG, C.J., PIERCE, WAIT, DONAHUE, & LUMMUS, JJ.

*Damages*, For property taken or damaged under statutory authority. *Evidence*, Opinion: expert; Competency.

In the provisions of St. 1923, c. 480, § 8, relating to the taking by the city of Boston of land for the purposes of the Dorchester Tunnel, that any "person sustaining damage by reason of property or rights

---

* With this petition there were tried in the Superior Court the following petitions: Hattie H. Wagner *vs.* City of Boston, Same *vs.* Same, Same *vs.* Same, Isaiah E. Wagner & another *vs.* Same, John F. Bishop & another *vs.* Same, Rebecca Noble Pierce *vs.* Same, Millard F. Wentworth & another *vs.* Same, Charles H. Butcher & another *vs.* Same, Warren E. Trott & another *vs.* Same, James D. Moore & another *vs.* Same, Harriet A. C. Davis *vs.* Same. By agreement of the parties, the bill of exceptions in this action was "to be considered as equally applicable to all the cases."

in property taken or injured by the department under authority of"
that chapter "except public ways or lands, shall be entitled to recover
the same from the city under" G. L. c. 79, the statute relating to
eminent domain, the reference to c. 79 does not relate merely to the
course of proceeding to be followed in enforcing rights of persons seek-
ing such damages, but also fixes the measure of their rights to damages;
and, where no land was taken, recovery thus was limited to special
and peculiar damages beyond those common to the vicinage and apart
from such injury as, but for the acts authorized by said c. 480, would
have constituted merely a nuisance not amounting to a taking.

At the trial of a petition for the assessment of damages under St. 1923,
c. 480, § 8, brought by one whose land was not taken under the statute
but who sought damages because noise, vibration and dust caused by
the operation and maintenance of the system authorized by the act
were such as to constitute a nuisance at common law although that
nuisance was authorized by the statute and did not amount in itself
to a taking of his property, it was proper for the judge to refuse to
rule that the obligation of the city of Boston was to pay all special
and peculiar damage arising from the maintenance and operation of
the rapid transit system.

At such trial it also was proper for the judge to refuse to rule, "If the
noise or vibration occasioned by the operation of the rapid transit
trains was harmful to either the health or the comfort of ordinary
people living on the land of the petitioners, the petitioner is entitled
to recover for the damage to his real estate so occasioned."

It was proper, at the trial above described, to refuse to permit a physician,
called by the petitioner and qualified as a neurologist, who had testi-
fied that he had visited the premises once, three days before the day
he testified, had stayed on the petitioner's property for a few minutes,
and had heard the noise and felt such vibration as was there, to answer
an inquiry, what effect, if any, the noise and vibration he had found
would have on the health and comfort of ordinary people living on the
land, it appearing that the jurors had taken a view of the premises
and had spent several hours in listening to the noise and experiencing
such vibration as existed there from passing trains, and there having
been admitted conflicting testimony with regard thereto.

PETITION, filed in the Superior Court on February 12,
1929, and described in the opinion.

This petition and those named in the footnote were tried
together before *Greenhalge,* J.  Material evidence and rul-
ings by the judge are set out in substance in the opinion.
There was a verdict for the respondent in each case.  The
petitioners alleged exceptions.

*H. R. Donaghue,* (*G. W. Cox* with him,) for the petitioners.

*C. E. Leonardi,* Assistant Corporation Counsel, for the
respondent.

WAIT, J. The several petitioners are owners of properties on Waldeck Street in the Dorchester district of Boston, which adjoin land formerly owned and used by the New York, New Haven and Hartford Railroad Company in the operation of its Shawmut branch. Pursuant to authority conferred by St. 1923, c. 480, the city of Boston, through its transit department, took the land of the railroad company for the purposes of the Dorchester Tunnel. Its lessee, the Boston Elevated Railway, now operates trains on the property so taken. No taking was made of land of any of the petitioners. Section 8 of said c. 480 provides as follows: "Any person sustaining damage by reason of property or rights in property taken or injured by the department under authority of this act, except public ways or lands, shall be entitled to recover the same from the city under" the statute relating to eminent domain, G. L. c. 79. At the trial, the petitioners excepted to the refusal of the presiding judge to give the following instructions: "2. The obligation of the city of Boston is to pay all special and peculiar damage arising from the maintenance and operation of the rapid transit system. 3. If the noise or vibration occasioned by the operation of the rapid transit trains was harmful to either the health or the comfort of ordinary people living on the land of the petitioners the petitioner is entitled to recover for the damage to his real estate so occasioned." It is the contention of the petitioners that St. 1923, c. 480, § 8, gives them a right to damages if their property has been injured by a nuisance resulting from the operation and maintenance of the system; that if noise, vibration, dust, etc., arising therefrom are such as to constitute a nuisance at common law they have received a special and peculiar damage even if that nuisance has been authorized by the statute and does not amount in itself to a taking of their property. They contend that the instructions actually given required the jury to find that any nuisance which might be found to exist was so extensive as to amount to a taking of their property; and, therefore, were· erroneous. They contend, at least by implication,

that the reference to G. L. c. 79 relates merely to the course of proceeding to be followed in enforcing their rights.

We think they are wrong. In our opinion the section refers to G. L. c. 79 as the measure of their rights as well as the means of enforcing them; that, under that chapter, recovery is limited to a special and peculiar damage beyond that common to the vicinage and apart from such injury as, but for the acts authorized by St. 1923, c. 480, would have constituted a nuisance not amounting to a taking. We find nothing in the cases cited by them, *Munn* v. *Boston,* 183 Mass. 421, *Hyde* v. *Fall River,* 189 Mass. 439, *Lentell* v. *Boston & Worcester Street Railway,* 202 Mass. 115, *Fifty Associates* v. *Boston,* 201 Mass. 585, which compels a different conclusion. Request 2 is not to be taken to be a correct statement of law when understood in the sense for which the petitioners contend. There was no reversible error in refusing to give it; because, taken in one sense, it was covered by the instructions given, and because, taken in the sense desired by the petitioners, it was erroneous. Put in another form, the petitioners contend that since under the decision in *Baker* v. *Boston Elevated Railway,* 183 Mass. 178, noise, vibration, etc., caused by the rapid transit system may be found to be a nuisance and a special and peculiar damage, recoverable under the statute which provided for the construction, operation and maintenance of the elevated railway in the streets of Boston, the same rule is applicable here. But St. 1923, c. 480, did not refer to the elevated railway act, St. 1894, c. 548, § 8, under which damages were assessed in the *Baker* case. It referred to G. L. c. 79, the statute dealing generally with takings by eminent domain. St. 1923, c 480, contemplated that the land belonging to the Old Colony Railroad Company, as owner, and the New York, New Haven and Hartford Railroad Company, as lessee, should be taken and that upon it should be placed surface tracks of the rapid transit system, §§ 2, 6, 9, 14, as has now been done. The Legislature must have contemplated the former location of the Shawmut branch as land which had been ac-

quired, substantially by eminent domain (see *Saltonstall*
v. *New York Central Railroad*, 237 Mass. 391, 394, *et seq.*),
with relation to which compensation had been paid, where
persons, whether their lands had been taken or not, had no
longer valid claims for damages.  Yet the Legislature made
no provision, such as was made in St. 1894, c. 548, declaring
the contemplated use to be an additional servitude.  They
left the usual rule of law to operate, that "all legal damages,
whether immediate or remote, present or future, arising
from the location of the railroad and that which follows
necessarily therefrom in way of subsequent maintenance
and operation, are paid for at the beginning, and that
whatever changes thereafter may be wrought upon the
railroad location in the natural development of the railroad
art constitutes no new cause of action unless authorized by
some new statute." *Saltonstall* v. *New York Central Rail-
road*, 237 Mass. 391, 396, 397.  Had they intended new
causes of action to arise for property owners in this locality,
we think they would have so stated in clear terms.  For
this reason, if for no other, we think the refusal to give the
request was proper.  The Old Colony Railroad Company,
as owner, and the New York, New Haven and Hartford
Railroad Company, as lessee, not the plaintiffs, were the
owners of the rights for which the petitioners are contend-
ing in this part of their argument.  Request 3 is a sufficient
definition of noise or vibration as a nuisance; but, for the
reasons stated, the jury could not properly be instructed
thus broadly that any noise or vibration sufficient to con-
stitute a nuisance would sustain recoveries.

A doctor, qualified as a neurologist, called by the peti-
tioners, testified that he had visited the premises once,
three days before, had stayed on several of the petitioners'
properties for a few minutes, and had heard the noise and
felt such vibration as was there.  He was asked what effect,
if any, the noise and vibration he had found would have on
the health and comfort of ordinary people living on the
land.  The question was excluded, with the offer of proof
that the doctor would testify they had and would continue
to have a harmful effect.  The jurors had taken a view of

the premises. They had spent several hours in listening to the noise and experiencing such vibration as existed there from passing trains. Conflicting testimony had been heard with regard thereto. We see no reversible error in the exclusion. The judge, in his discretion, well might consider that such opinion evidence would be of no assistance to the jurors and that the doctor had no such experience as qualified him to testify. Neither judge nor jurors knew what the doctor had heard or felt.

The jury from conflicting testimony, and under instructions not otherwise excepted to, found verdicts for the respondent.

*Exceptions overruled.*